**AFFIDAVIT OF PATRICIA NELSON, SPECIAL AGENT
INTERNAL REVENUE SERVICE-CRIMINAL INVESTIGATION**

**AFFIDAVIT IN SUPPORT OF CIVIL SEIZURE WARRANTS**

I, Patricia Nelson, a Special Agent with the Internal Revenue Service-Criminal Investigation (IRS-CI), (hereinafter referred to as "your affiant") being duly sworn, state as follows:

This Affidavit is submitted in application for a civil seizure warrant pursuant to Title 21 U.S.C. § 881(b) and 18 U.S.C. § 981(a)(1)(B) for the following subject safe deposit box:

Contents of safe deposit box number 012038 in the name of Manuel A. Luna at Wells Fargo Bank, 9350 East Arapahoe Road, Greenwood Village, CO 80112.

## GENERAL BACKGROUND

Your affiant is a Special Agent with the Internal Revenue Service Criminal Investigation (IRS-CI) and has been employed in this capacity since August of 1998. Currently, I am assigned to the Drug Enforcement Administration (DEA) and am working the financial aspects of narcotics related cases. I have completed the Special Agent Basic Training Academy in Glynco, Georgia, which included training on criminal tax and money laundering types of investigations. In addition, I have worked many cases involving tax fraud and financial crimes, including violations of Title 26, and Title 18 U.S.C. §§ 1956 and 1957.

Your affiant has further participated in several investigations involving offenses for distribution of, possession with intent to distribute, and conspiracy to distribute controlled substances.

Pursuant to my training and experience in the investigation of financial crimes and related offenses, your affiant knows that violators use and maintain records, documents, and files

1

(which are written, printed, magnetic or electronic) that are evidence of criminal acts and reflect the receipt and disposition of illegally obtained proceeds or income. Your affiant has been involved in the execution of numerous search warrants that resulted in the seizure of financial records, evidence of money laundering, including cash and other personal and real property related to criminal activity.

Individuals involved in this type of illegal activity (i.e., money laundering and narcotics trafficking) often use aliases, fictitious names, or false identification cards to avoid detection. These individuals also place assets in names other than their own to avoid identification of these assets by law enforcement agencies. Even though these assets are in other people'(s) names, these individuals continue to use these assets and exercise dominion and control over them. In addition, these individuals will use "business fronts" to attempt to conceal or disguise their identities and their illegal activities from law enforcement.

Individuals involved in illegal activities maintain books, receipts, notes, ledgers, and other papers to conduct their illegal activities, although these documents may be in code. It is common for individuals involved in illegal activities, to hide proceeds, including, but not limited to, the following: currency, financial instruments, precious metals, jewelry, vehicles, and other items of value. These individuals will keep assets and records of their illegal activities in secure locations, on their person, and within their containers, residences, offices, garages, storage buildings, and safe deposit boxes for ready access, and also to conceal such items from law enforcement authorities.

Individuals involved in illegal activities (i.e., money laundering and narcotics trafficking) amass large proceeds from these activities, and that these individuals attempt to legitimize these proceeds. I know that to accomplish these goals, these individuals utilize, including, but not

limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts.

**Overview of Investigation**

1. On Tuesday, January 24, 2012, HERNAN GASTELUM, JORGE GUIJARRO, AGUSTIN AGUIRRE-RAMIREZ, ISAIAS RETERIA-PEREZ, MANUEL LUNA, aka" EL BOLAS" and 10 other individuals (collectively referred to as the AGUIRRE-RAMIREZ DRUG TRAFFICKING ORGANIZATION or DTO) were indicted by a Federal Grand Jury in the District of Colorado on multiple counts related to the distribution of cocaine and money laundering. Case No. 12-cr-00038-CMA. This indictment was the culmination of a multi-jurisdictional investigation of the drug trafficking activities of the AGUIRRE-RAMIREZ DTO which included surveillance, court authorized wiretaps, vehicle stops, and other investigative techniques. According to information developed throughout the investigation, the AGUIRRE-RAMIREZ DTO received the vast majority of illegal drugs (cocaine) from sources of supply located in the Los Angeles, California area.

2. Investigators have learned that the drugs associated with this organization are smuggled from Mexico into California and then from California to Colorado in hidden compartments in vehicles. Once the drugs are sold in Colorado (and elsewhere) the proceeds are returned to the sources of supply in the Los Angeles, CA area. The money is secreted in the same hidden compartments in the vehicles which carried the illegal drugs prior to their sale.

3. During the investigation, law enforcement officers have determined that GASTELUM, who lives in California, was a source of illegal drugs for AGUIRRE-RAMIREZ, who lives in Colorado. GASTELUM coordinated with GUIJARRO, who also lives in

California, to get illegal narcotics and then transport the narcotics in vehicles to AGUIRRE-RAMIREZ, who would distribute the illegal narcotics in the Denver, Colorado area through a number of couriers or "runners." AGUIRRE-RAMIREZ would then send the proceeds of the illegal narcotics back to California, often times in the same vehicles which transported the narcotics to Colorado. MANUEL LUNA has been identified as a "runner" for the AGUIRRE-RAMIREZ DTO. AGUIRRE-RAMIREZ directs LUNA to distribute narcotics to AGUIRRE-RAMIREZ' customers in the Denver, CO area.

4. The following is not an exhaustive enumeration of the facts that I have learned during the course of this investigation, but are the facts which I believe are sufficient to establish probable cause for the requested seizure warrant. References to other law enforcement personnel's participation in this case may be referred to generally as "agents" or "investigators." I have reviewed reports of investigation prepared by other agents and investigators pertaining to this investigation. All of the facts set forth below are true and correct to the best of my knowledge:

## Probable Cause

5. On Tuesday, January 24, 2012, fifteen individuals (AGUSTIN AGUIRRE-RAMIREZ, ISAIAS RENTERIA-PEREZ, HERNAN GASTELUM, JORGE GUIJARRO, JESUS GOMEZ-VADIVIA, MANUEL LUNA, LUIS REYNOSO-RODRIGUEZ, JAIME QUINTERO-GIL, FNU LNU (PARIENTE), PEDRO SANCHEZ, JIM GONZALES, JESUS ALFONSO URIAS-BOJORQUEZ, JESUS SALAZAR-ORDONEZ, RAMONA ROMAN, and AGUSTIN SOLORIO-MENDEZ) were indicted by a Federal Grand Jury in the District of Colorado on various charges related to the trafficking of narcotics. Case No. 12-cr-00038. This is one of a number of indictments returned charging individuals involved in this DTO. The

indictment was initially ordered restricted, but has since been unrestricted. The indictment alleges violations of the following: 1) conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), and 841(b)(1)(A)(ii)(II); 2) money laundering and conspiracy to launder money offenses in violation of Title 18, United States Code, section 1956; 3) distribution and possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, and aiding and abetting the same, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(B)(ii)(II) and Title 18, United States Code, Section 2; and 4) other violations of the United States Code related to drug trafficking, including use of a communication device to facilitate drug trafficking.

6. On July 13, 2011, DEA Special Agent (SA) Scott Nickerson of the Los Angeles, California DEA Division Office, Group 4 provided information to Denver OCDETF Strikeforce agents regarding a drug trafficking organization that was being investigated by SA Nickerson that appeared to have members in the Denver, Colorado area. According to information provided by SA Nickerson, DEA SAs and TFOs in Los Angeles, California initiated an investigation into a narcotics trafficking organization in the Los Angeles, California area in February, 2011. According to SA Nickerson, the organization under investigation is comprised of multiple individuals involved in the large scale distribution of cocaine and methamphetamine (multi kilogram and multi pound quantities) and the remittance of large amounts of narcotics proceeds. To date, the investigation in the Los Angeles area has resulted in the seizure of hundreds of kilograms of cocaine, multiple pounds of methamphetamine, and millions of dollars in US currency, all of which is believed to be drug proceeds. This investigation also led to the

interception of wire communications with a multi-kilogram customer in Denver, CO by the name of AGUSTIN AGUIRRE-RAMIREZ.

7. On July 8, 2011, communications were intercepted between HERNAN GASTELUM and AGUSTIN AGUIRRE-RAMIREZ on California TT27. The two men were believed to be discussing a shipment of narcotics that AGUSTIN AGUIRRE-RAMIREZ received from HERNAN GASTELUM. This discussion included the narcotics weight, quality, ability to be resold, as well as the procedure to repackage and return a portion of the unwanted (low quality) drugs. Los Angeles, California investigators intercepted communications on California TT 27 for approximately one day before the telephone was no longer used by HERNAN GASTELUM.

8. The Los Angeles, California Court Order authorizing the interception of wire and electronic communications on California TT 27 also authorized the use of third party GPS "pings" including the telephone being used by AGUSTIN AGUIRRE-RAMIREZ, 303-350-6894. SA Nickerson initiated the third party "pings" on this telephone which provided the location of the telephone on a regular basis. The data from the "pings" on 303-350-6894 indicated the telephone (and presumably the user of the telephone) was in the Denver, Colorado area.

9. Utilizing the data provided from the DEA investigation in Los Angeles as well as information from other ongoing investigations in the Denver metro area, Denver agents initiated an investigation into the drug distribution activities of the AGUIRRE-RAMIREZ DTO.

10. Since the investigation in Denver, CO was initiated in July 2011, investigators from the Denver DEA OCDETF Strikeforce have sought and obtained orders authorizing the interception of wire communications of eleven telephones used by the AGUIRRE-RAMIREZ

6

DTO. All of the orders were issued by the Federal Court in the District of Colorado. Most of the intercepted calls were in the Spanish language. Excerpts of these calls which are in quotations in this affidavit are quotes of the English summaries of these intercepted calls prepared by certified linguists. In addition, the Strikeforce utilized several other investigative techniques to identify members of the AGUIRRE-RAMIREZ DTO and observe their communications and transactions with others. Techniques included mobile and stationary surveillance, law enforcement records checks, GPS tracing devices, traffic stops, etc.

### AGUIRRE-RAMIREZ DTO Investigative Results

*Recovery of One Kilogram of Cocaine*

11.     On August 25, 2011, a traffic stop was conducted on a person who, based on court authorized intercepted communications and surveillance, was suspected of receiving cocaine from AGUSTIN AGUIRRE-RAMIREZ. On that date, there were several intercepted communications between AGUSTIN AGUIRRE-RAMIREZ and an unidentified male customer coordinating the purchase of one kilogram of cocaine from AGUIRRE-RAMIREZ. That evening, surveillance observed a vehicle used by AGUSTIN AGUIRRE-RAMIREZ parked outside of the apartment building at 6550 South Dayton, an address previously identified as being associated with the DTO. Approximately 5 minutes later, the customer called AGUSTIN AGUIRRE-RAMIREZ and said they (the customer and his friend from Greeley) had just arrived. Surveillance did not observe the parties enter the building; however, approximately 10 minutes later, surveillance observed 2 Hispanic males walk from the building and to a 2004 GMC Envoy registered in Colorado to Franky Rodriguez at 111 14th Avenue #1B, Greeley, Colorado. Surveillance followed the GMC Envoy to an apartment complex in Aurora, Colorado where the passenger was dropped off. The GMC Envoy drove north towards Greeley, Colorado and was

stopped by the Colorado State Patrol for a traffic violation in LaSalle, Colorado.  The driver of the vehicle, Jesus Salazar-Ordonez was contacted and a search of the vehicle was completed. Troopers located a brick of cocaine (approximate weight is 1 kilogram) concealed in the vehicle.

12. Investigators believe the narcotics located in the vehicle were obtained from AGUSTIN AGUIRRE-RAMIREZ at 6550 South Dayton and the male dropped off in Aurora was the person who called AGUIRRE-RAMIREZ to set up the deal.  Agents believe that Jesus Salazar-Ordonez was the customer's friend from Greeley, Colorado who was the intended recipient of the 1 kilogram of cocaine.

### *Recovery of $339,370 US Currency Associated With the CO Stash House*

13. During the week of November 28, 2011, there were multiple court authorized wire intercepts which suggested AGUSTIN AGUIRRE-RAMIREZ and ISAIAS RENTERIA-PEREZ were in contact with the California source of supply (HERNAN GASTELUM) and that AGUSTIN AGUIRRE-RAMIREZ and ISAIAS RENTERIA-PEREZ were expecting a load of cocaine from this source of supply.  (Denver agents believe based on the totality of the circumstances learned throughout the investigation that the identity of the source of supply is HERNAN GASTELUM and that AGUSTIN AGUIRRE-RAMIREZ and ISAIAS RENTERIA-PEREZ refer to HERNAN GASTELUM as "NALGON" or "NALGAS" on the intercepted communications, which according to Spanish language interpreters means "big butt" or "fat ass").  Through intercepted communications, investigators were able to determine that the load of narcotics was expected to arrive in Denver on Friday December 2, 2011.  Investigators learned in later intercepted calls on TARGET TELEPHONE ELEVEN that the vehicle most likely contained 20 kilograms of cocaine.

14.     On December 2, 2011, law enforcement observed a Volkswagen Touareg with California license plate 6TQP267 driving eastbound on Interstate 70 near the Silverthorne exit. The vehicle was stopped near Georgetown, Colorado on Interstate 70, for traffic violations. The driver was identified by his California driver's license as JIM GONZALES, DOB November 17, 1974. JIM GONZALES told the Colorado State Trooper he was coming to Colorado from California to look for work and that he was borrowing the car to see if he wanted to purchase it from the owner, who was identified by JIM GONZALES and registration information as Jesus Alberto Valenzuela. JIM GONZALES gave the trooper permission to search the car. The car was searched and JIM GONZALES and the vehicle were ultimately released from the stop after nothing illegal was found in the passenger compartment of the vehicle.

15.     Physical surveillance was sent to 101 South Nome Street, Aurora, Colorado (anticipating the load vehicle would be driven to this location for the drugs to be offloaded) and observed the Volkswagen Touareg with California license plate, 6TQP267, arrive. According to intercepted communications, the load of cocaine had arrived and AGUSTIN AGUIRRE-RAMIREZ was preparing to distribute it.

16.     The following day (December 3, 2011) intercepted communications indicated the AGUIRRE-RAMIREZ (DTO) spent the day distributing the cocaine. According to intercepted communications on December 3, 2011, the organization had finished selling the drugs. In the afternoon, AGUSTIN AGUIRRE-RAMIREZ returned to 101 South Nome Street, Aurora, Colorado to (investigators believe) deliver the proceeds of the sale of the drugs to be loaded into the car and returned to the source of supply in California. Intercepted calls indicated that the load car would return to California and that the source of supply intended to send a second load of cocaine within a few days.

9

17. In the evening hours of Saturday, December 3, 2011, physical surveillance observed the Volkswagen Touareg leave 101 South Nome Street, Aurora, Colorado followed for a time by a white Jeep Cherokee associated with ISAIAS RENTERIA-PEREZ. The VW Touareg was followed by investigators as it drove out of the Denver area west bound on Interstate 70.

18. DEA investigators in Denver coordinated with DEA investigators in St. George, Utah to have the vehicle stopped. At approximately 7:11 a.m., the VW Touareg was stopped near St. George, Utah for a traffic violation. Ultimately, a State of Utah search warrant was obtained for the vehicle after agents in Utah developed independent probable cause supporting the warrant. Pursuant to the search warrant, investigators located $339,370 in US currency packaged in 12 separate bundles hidden in compartments located in the VW Touareg. Based on this finding (the US currency), the intercepted communications and physical surveillance, investigators believe the VW Touareg may have transported 20 kilograms of cocaine in hidden compartments from the source of supply (HERNAN GASTELUM) located in the Los Angeles, California area to Denver. The drugs were offloaded at 101 South Nome Street, Aurora, Colorado and distributed. Once distributed, AGUSTIN AGUIRRE-RAMIREZ (and others in his Organization) collected the proceeds and returned them to 101 South Nome Street, Aurora, Colorado where ISAIAS RENTERIA-PEREZ and his associates loaded the US currency into the hidden compartments that originally held the cocaine.

19. After his arrest on February 9, 2012, and after receiving Miranda warnings, HERNAN GASTELUM admitted that he coordinated approximately six multi kilo shipments of cocaine to AGUIRRE-RAMIREZ and made approximately $6000 per shipment. According to HERNAN GASTELUM, each shipment contained between six and ten kilograms of cocaine.

HERNAN GASTELUM also stated that money which was confiscated on approximately December 4, 2011, was being sent by AGUIRRE-RAMIREZ for payment of narcotics. Law enforcement investigation reveals that the amount HERNAN GASTELUM is referring to is the $339,370.00 seized on December 4, 2011, in Utah.

### MANUEL LUNA, aka "EL BOLAS"

20. Starting in July 2011, the Strikeforce regularly established surveillance in areas where the AGUIRRE-RAMIREZ DTO was known to live and conduct business. Agents identified several residences and vehicles utilized by the AGUIRRE-RAMIREZ DTO, including a 2000 Blue Jeep Cherokee, CO plate 613-WUX which is registered to Martin Pena at 1360 Verbena St., Denver, CO. The driver of this vehicle was described as a Hispanic male with dark long hair and a darker complexion. Based on intercepted communications, the driver of this vehicle was identified as "EL BOLAS," who works as a distributor or "runner" for AGUIRRE-RAMIREZ. EL BOLAS was observed at AGUIRRE-RAMIREZ' residence and other residences known to be used by the AGUIRRE-RAMIREZ DTO. El BOLAS was also observed accessing other vehicles associated with the DTO, including a black Toyota Camry known to be used almost exclusively by AGUIRRE-RAMIREZ. In addition, EL BOLOS was observed driving with another runner for the AGUIRRE-RAMIREZ DTO, JESUS GOMEZ-VALDIVIA, aka "El Sereno."

21. Intercepted wire communications between AGUIRRE-RAMIREZ and his customers identify EL BOLAS as an individual providing assistance to the AGUIRRE-RAMIREZ DTO. For example, during a conversation with an unidentified male who was negotiating a cocaine purchase, the customer asks if AGUIRRE-RAMIREZ "could send his guys over later since was heading out right now." AGUIRRE-RAMIREZ tells the customer that

"….Bolas was around that way at the moment." In additional conversations, AGUIRRE-RAMIREZ regularly tells customers that either EL Sereno or El Bolas would be driving to a customer's location and providing narcotics.

22. Law enforcement databases identified MANUEL LUNA as an individual previously associated with the Blue Jeep that El BOLAS was observed driving on several occasions. MANUEL LUNA's driver's license photo was compared to photos of EL BOLAS obtained during surveillance and it was determined that EL BOLAS' true identity is MANUEL LUNA.

23. Additional information establishing that MANUEL LUNA was a courier for the AGUIRRE-RAMIEZ DTO includes the following: JULIO CESAR TORRES-LEE was indicted on February 6, 2012, in the District of Colorado in Case No. 12-cr-00054-CMA, on numerous drug trafficking offenses related to his involvement in the AGUIRRE-RAMIREZ DTO. On August 21, 2011, law enforcement officers intercepted a telephone call between JULIO CESAR TORRES-LEE and AGUIRRE-RAMIREZ during which TORRES-LEE arranged for the purchase of narcotics from AGUIRRE-RAMIREZ. On that same day, law enforcement conducted surveillance of the arranged meeting between TORRES-LEE and AGUIRRE-RAMIREZ's couriers. Photos were taken of the couriers during this meeting. Law enforcement officers were able to identify these couriers based upon knowledge gathered during the investigation, surveillance photographs taken during the investigation, and actual surveillance of the couriers. One of the couriers was identified as El Sereno, later determined to be JESUS GOMEZ-VALDIVIA (indicted in the District of Colorado in Case Nos. 12-cr-00038-CMA and 12-cr-00054-CMA on numerous drug trafficking offenses). The other courier was referred to

during the investigation as "Bolas" and was later identified as MANUEL LUNA as discussed above.

24. In addition, on November 18, 2011, Manuel Luna was photographed during surveillance at 6550 South Dayton Street, Apartment B306, Centennial, Colorado. Investigation revealed that the AGUIRRE-RAMIREZ DTO referred to this location as the "Office" and would prepare the drugs for sale (weigh and package them) and receive and re-package drug proceeds to be shipped back to the source of supply in Los Angeles, California, at this location.

**EXECUTION OF SEARCH WARRANTS IN THE DISTRICT OF COLORADO**

25. On February 8, 2012, federal search warrants were obtained in the United States District Court for the District of Colorado for the search of three residences, one business, and one vehicle all associated with this drug trafficking organization. Case Nos. 12-sw-5104-BNB, 12-sw-5105-BNB, 12-sw-5108-BNB, 12-sw-5109-BNB, and 12-sw-5110-BNB. These warrants were executed in the District of Colorado on February 9, 2012.

26. On February 9, 2012, Manuel LUNA was contacted by law enforcement and subsequently arrested pursuant to a federal arrest warrant. After being advised of his Miranda rights, LUNA consented to a search of his residence. Within the residence, investigators located and seized multiple financial documents including a safe deposit box lease agreement from Wells Fargo Bank for Box No. 012038. This agreement shows that MANUEL LUNA leases the subject safe deposit box with this number at the Wells Fargo Bank branch located at 9350 East Arapahoe Road, Greenwood Village, CO. The key to this box was also recovered from the residence. In addition, investigators located and seized a digital scale and an undetermined amount of currency (indicia of narcotics trafficking) and a US Passport and other identification for MANUEL LUNA (confirming MANUEL LUNA's identity).

27. Documents also obtained from the consent search at LUNA's residence show that LUNA maintained some legitimate employment during 2011. Department of Labor was queried and it was determined that LUNA earned approximately $26,650 in 2011. Additional documents obtained also show that LUNA electronically transferred funds for a total of at least $3600 to individuals in Mexico. Bank account records show that LUNA made currency deposits into his bank accounts although employment records show LUNA was paid via check. The bank records also show that LUNA had over $4,700 in deposits as of November 2011. This collective information indicates that LUNA had funds available to him in excess of his legitimate wages, which combined with the evidence of his involvement in narcotics trafficking, establish that LUNA received illegal proceeds from his involvement in the drug trafficking activities of the AGUIRRE-RAMIREZ DTO.

## CONCLUSION

28. Based on the information above, investigators believe that MANUEL LUNA, aka "EL BOLAS" has been significantly involved in the distribution of narcotics in the Denver, CO area, in association with the AGUIRRE-RAMIREZ DTO. Investigators also believe that MANUEL LUNA may have concealed additional proceeds, profits or indicia of illegal narcotics trafficking.

29. The facts set forth above are not all of the facts known to the investigation, but are sufficient to establish probable cause to believe that that the subject safe deposit box represents and contains proceeds traceable to violations of Title 21 U.S.C. § 846 and Title 21 U.S.C. § 841, and the property is thus subject to forfeiture pursuant to Title 21 U.S.C. § 881(a)(6).

Accordingly, your affiant seeks a civil seizure warrant pursuant to Title 21 U.S.C. § 881(b) and 18 U.S.C. § 981(a)(1)(B) for the following property:

Contents of safe deposit box number 12038 in the name of MANUEL LUNA, at Wells Fargo Bank located at 9350 East Arapahoe Road, Greenwood Village, CO 80112.

_____
Patricia Nelson, Special Agent
Internal Revenue Service – Criminal Investigation

Subscribed and sworn to before me this 16th day of February, 2012.

_____
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO